UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 04-14095 |
| | ) | |
| MONICA PIROCH, | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Adversary Proceeding No. 04-1610 |
| ALAN J. TREINISH, | ) | |
| Plaintiff, | ) | Judge Arthur I. Harris |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHERN SAVINGS AND | ) | |
| LOAN COMPANY, *et al.*, | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

The plaintiff-trustee filed this adversary proceeding on November 13, 2004, seeking a determination of all interests in real property located at 2021 West River Road, Elyria, Ohio and authority to sell the property pursuant to Section 363(h) of the Bankruptcy Code. The parties submitted the matter for decision based on stipulations. The issue before the Court is whether this real property is part of the debtor's estate or whether it has been successfully transferred into a spendthrift trust and therefore out of the estate. As detailed below, this Court finds that the trust is self-settled, invalidating the trust's spendthrift clause, and therefore the real property is still property of the debtor's bankruptcy estate and subject to sale and distribution.

## BACKGROUND

The parties submitted the following joint stipulations:

1. On November 18, 1993, Stephen Piroch, transferred to the Defendant, Monica Piroch, all of his interest in and to the real property located at 2021 West River Road, Elyria, Ohio, being permanent parcel numbers 10-00-003-101-015, 10-00-003-101-016, and 10-00-003-101-020. The Defendant, Monica Piroch, uses the property as her primary residence.

2. On or about March 29, 1995, the Defendant, Monica Piroch, obtained a loan from the Defendant, Northern Savings and Loan Company, secured by a mortgage upon the above real property.

3. On or about November 18, 1995, Robert W. Hopper and Heritage Assurance Group, both of Palos Hills, Illinois, created the Heritage Investment Trust #1237. The Statement of the Heritage Investment Trust #1237 states the following at page 1:

    > The purpose of this Common Law Trust Organization is to provide an entity in which the members of Heritage Assurance Group can invest assets to enhance their financial security for themselves and their future generations and to receive professional assistance in these matters by virtue of their membership in Heritage Assurance Group, and to provide for legal assistance for the members of Heritage Assurance Group in the event of a challenge arising out of the terms and benefits of the trust.

4. The Trust Statement further provides, at page 2 thereof, the following:

    > POWERS OF TRUSTEES: Trustees may do anything any individual may legally do in any state or country, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein especially noted, at their discretion, for the benefit of The Heritage Investment Trust #1237, such as viz: buy, sell, or lease real estate for the surface or mineral

rights, buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks, or copyrights, buy, sell or conduct mail-order business, or branches thereof, operate stores, shops, factories, warehouses, or other trading establishments or places of business of any kind, construct, buy, sell, lease, or rent suitable buildings or other places of business, advertise different articles or business projects, borrow money for any business project, pledging the Trust property for the payment thereof, hypothecate assets, property, or both, of the Trust in business projects, own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous.

5. The Statement further provides, at page 3, the following:

> CERTIFICATES OF BENEFICIAL INTEREST: The Beneficial Interests, as a convenience, for distribution are divided into One Hundred (100) units, substantially in the certificate form hereto attached. They are non-assessable, non-taxable (under the provisions of Section 1001 of Internal Revenue Code), non-negotiable, non-transferable (except back to the Trust) and the lawful possessor thereof shall be construed the true and lawful owner thereof. The lawful owner may, if he so desires, cause his Beneficial Certificate to be registered with the Secretary of the Trustees. The Certificates of Beneficial Interest are to expressly state that the holder of the Certificate expressly agrees that the holder does not have any right, title, or legal interest in the assets of the trust, in law or in equity, and that moreover, upon the death, insolvency, or dissolution of the holder hereof, the Certificates (and all rights thereunder) shall be absolutely NULL AND VOID. However, all or part of the Units represented by the Certificates may be transferred before death, insolvency, or dissolution of the holder, but only upon the prior approval of the Trustees, and in accordance with the provisions of this indenture.
>
> SPENDTHRIFT: The Trustee is not to recognize any transfer, encumbering, mortgage, pledge, hypothecation, order, or assignment

3

of any Beneficiary by way of anticipation of any part of the income or principal hereof, and the income and principal of the Trust shall not be subject in any manner to transfer by operation of law, unless otherwise herein provided, and shall be exempt from teh claims of creditors and other claimants and from orders, decrees, levies, attachments, garnishments and executions, and other legal or equitable process of proceedings to the fullest extent permissible by law. Each Beneficiary is expressly prohibited from any of the above.
. . .

DURATION - CLOSURE: This Trust shall continue for a period of twenty-five years from date, unless the Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve trust assets, liquidate th assets, distribute, and close the Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the Beneficiaries.

6. The Amendment to the contract creating The Heritage Investment Trust #1237, also dated November 18, 1995, stated as follows:

The contract creating The Heritage Investment Trust #1237 is expressly IRREVOCABLE, and may not be altered or amended in any respect unless specifically authorized by the contract instrument, and may not be terminated except through distributions permitted by the contract instrument.

7. In the Minutes of the First Meeting of The Heritage Investment Trust #1237 dated November 18, 1995, Robert W. Hopper, as Trustee accepted and acknowledged as property of the Trust the sum of $10.00. On November 25, 1995, Robert W. Hopper, Trustee, certified that Heritage Assurance Group was the owner of 100 Units of Beneficial Interest in The Heritage Investment Trust #1237. On that same date, Michael Vallone of Heritage Assurance Group transferred ninety-nine Units of Beneficial Interest in The Heritage Investment Trust #1237 to The Heritage Investment Trust #1237.

4

8. The Minutes of the Second Meeting of The Heritage Invest Trust #1237 dated November 28, 1995 reveal that Monica Piroch was issued 99 Certificates of Beneficial Interest in The Heritage Investment Trust #1237 for an undisclosed investment. On that same date, a Certificate of Beneficial Interest was issued to Monica Piroch.

9. On December 28, 1995, Monica Piroch executed her Bill of Sale, attempting to transfer to The Heritage Investment Trust #1237 her interest in the real property located at 2021 West River Road, S., Elyria, Ohio and all personal property located at that address.

10. On January 4, 1996, Robert Hopper resigned as Trustee of the The Heritage Investment Trust #1237 and Monica Piroch was appointed Trustee.

11. Pursuant to a Quit-Claim Deed dated January 26, 1996, Monica Piroch transferred the real property located at 2021 West River Road, Elyria, Ohio to Monica Piroch, Trustee of The Heritage Investment Trust #1237. Ms. Piroch continues to reside in that property.

12. On April 3, 2004, the Defendant, Monica Piroch, filed her voluntary petition under Chapter 7 of the Bankruptcy Code.

13. On November 13, 2004, the Plaintiff filed his Complaint to Determine the Priority, Validity, and Extent of Liens and Interests and For Authority to Sell the Estate's Interest and the Interest of Co-Owner of Real Property Pursuant to Section 363(h) of the Bankruptcy Code.

14. The real property is subject to a mortgage in favor of the Defendant, Northern Savings and Loan Company, in the sum of $45,283.71 less payments since November 30, 2004. The three parcels of real property have an approximate fair market value, according to the Auditor for Lorain County, Ohio of $125,600.00 and of $150,000.00 according to the testimony of the Defendant, Monica Piroch.

## JURISDICTION

The Court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

## DISCUSSION

Section 541 of the Bankruptcy Code defines "property of the estate." Subject to a few, specifically enumerated exceptions, the estate consists of all legal and equitable interests in property a debtor has at the commencement of a Chapter 7 case. 11 U.S.C. § 541(a). Section 541(c)(1) specifically states that property of the estate includes a debtor's interest regardless of any provision in an agreement that restricts or conditions transfer of that interest. Section 541(c)(2), however, provides an exception: "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." In other words, beneficial interests in a trust that are subject to enforceable restrictions on transfer under nonbankruptcy (*i.e.*, state or federal) law do not become part of the debtor's bankruptcy estate.

Section 541(c)(2) has been commonly interpreted to protect the debtor's interest in a valid "spendthrift trust" from inclusion in estate property. *See*

6

*generally* 5 COLLIER ON BANKRUPTCY ¶ 541.11[2] (15th ed. rev. 2005); 3 NORTON BANKR. LAW AND PRACTICE 2D § 51:16 (2005). The plaintiff-trustee, however, asserts that debtor's spendthrift trust transfer restrictions are not valid under Ohio law because the trust is self-settled. The plaintiff-trustee further asserts that if the transfer restrictions are invalid, the debtor's beneficial interest in the trust property must be included as property of the estate.

In general, spendthrift trusts are enforceable under Ohio law and prevent creditors from reaching trust assets. *Domo v. McCarthy*, 66 Ohio St.3d 312, 612 N.E.2d 706, 708, 711 (1993) (following *Scott* and stating that "in Ohio, a spendthrift provision of a trust, when applicable, will be given full force and effect"); *Scott v. Bank One Trust Co., N.A.*, 62 Ohio St.3d 39, 577 N.E.2d 1077 (1991) (finding spendthrift clause enforceable and overruling previous case law to the contrary). However, self-settled spendthrift trusts, where the grantor is also the beneficiary, are generally recognized as void as against public policy. *See* RESTATEMENT (THIRD) OF TRUSTS §§ 58 & 156 (2003). Ohio case law follows this general rule that self-settled spendthrift trusts are not valid. *Miller v. Ohio Dept. of Human Serv.*, 664 N.E.2d 619, 621 (Ohio Ct. App. 1995); *In re Frangos*, 135 B.R. 272, 274 (Bankr. N.D. Ohio 1992).

Self-settled trusts are void to prevent individuals from placing their property

7

beyond the reach of their creditors while at the same time still reaping the bounties of such property. The stipulated facts make clear that this is exactly what Ms. Piroch has attempted to do. In 1993 Ms. Piroch obtained the real property at issue, and she currently uses the property as her primary residence. In November of 1995 the Heritage Investment Trust (Trust) was created, and it contains a spendthrift clause. On November 28, 1995, the Trust issued 99 of 100 beneficiary shares to Ms. Piroch. On January 4, 1996, Ms. Piroch was appointed Trustee of the Trust, and on January 26, 1996, Ms. Piroch quit-claimed the real property to the Trust. In sum, Ms. Piroch was trustee and 99% beneficiary of the spendthrift trust when she quit-claimed her real estate to the Trust. In other words, she transferred her property to a trust but remains completely in control of her property while she attempts to protect it from her creditors. Thus, pursuant to Ohio case law, the trust at issue is not a valid, enforceable spendthrift trust based on the beneficiary's status as grantor of the trust.

## CONCLUSION

Because the spendthrift clause is unenforceable, Debtor's interest under the trust is an asset of the estate. As property of the estate, the real estate is subject to sale by the trustee pursuant to Section 363 of the Bankruptcy Code. The details of

8

any sale will be the subject of further orders of the court following additional motions by the trustee.

IT IS SO ORDERED.

_____
Arthur I. Harris
United States Bankruptcy Judge